IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:14-CV-150-BO

| | |
|---|---|
| GERALDINE L. VANDEVENDER, Administrator of the Estate of DEL RAY BAIRD, deceased, and JACQUELINE ANN BAIRD, deceased, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLUE RIDGE OF RALEIGH, LLC d/b/a BLUE RIDGE HEALTH CARE CENTER, et al., <br><br> Defendants. | **ORDER** |

This matter is before the Court on defendants' individual motions to dismiss [DE 19, 21, 23]. For the reasons stated herein, the motions are DENIED.

## BACKGROUND

Plaintiffs, administrators of the estates of deceased persons who were residents of North Carolina at the time of their deaths, and Samuel Kee, Sr., individually, filed the original complaint in Wake County Superior Court on December 23, 2013. On January 28, 2014, Plaintiffs filed an amended complaint. In the amended complaint plaintiffs bring state law claims for medical and/or professional negligence, ordinary corporate negligence, ordinary negligence, wrongful death, intentional and negligent infliction of emotional distress, breach of contract, and punitive damages. These allegations stem from the treatment and deaths of three individuals while being cared for at the Blue Ridge Health Care Center ("BRHCC") facility at 3830 Blue Ridge Road, Raleigh, NC 27612. Defendant Blue Ridge of Raleigh, LLC ("Blue Ridge") is alleged to have held the license to operate the nursing home, BHRCC, where each of the deaths occurred in this case.

1

On March 13, 2014, defendant Care One, LLC ("Care One") filed a notice of removal which removed the case to this Court. The removal is based this Court's diversity subject matter jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1332. Defendants BRHCC, Care One, and Care Virginia Management, LLC ("Care Virginia") now seek the dismissal of all claims against them pursuant to FED. R. CIV. P. 12(b)(6), and defendant Care One seeks the dismissal of all claims against it pursuant to FED. R. CIV. P. 12(b)(2).

## DISCUSSION

Defendants BRHCC and Care Virginia's motions to dismiss are substantially identical and will be discussed as one by the Court.

I.   DEFENDANTS BHRCC AND CARE VIRGINIA'S MOTIONS TO DISMISS.

A Rule 12(b)(6) motion challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

2

Defendants BRHCC and Care Virginia challenge the sufficiency of the complaint in four ways. They first argue that the complaint fails to state a claim because it does not meet the pleading standards set forth in *Twombly* and its progeny. Second, they argue that the complaint does not state a claim for ordinary negligence because all of the injuries suffered sound in medical malpractice. Third, defendants argue that the complaint is entirely devoid of factual allegations that support a failure by defendants relating to their policies, management, or administrative decisions and of facts that tend to show how these alleged failures caused injury to the residents at the facility thereby failing to state a claim for corporate negligence. Fourth, they argue that the complaint fails to state a claim for negligent or intentional infliction of emotional distress because it fails to show an essential element of those claims.

  A.  The Pleading Standards.

A complaint must meet the plausibility standard as announced in *Twombly* and *Iqbal*. To satisfy that standard a complaint must contain sufficient facts for "the court to draw a reasonable inference that defendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Defendants specifically complain that the complaint groups all five of the corporate defendants together and that none of the defendants can ascertain what alleged acts or omissions each are allegedly responsible for. Plaintiffs contend that defendants' own admissions in their memoranda supporting their motions to dismiss show that they acted together in the operation of the BRHCC nursing home. [DE 20 at 2; DE 24 at 2]. Therefore the complaint properly asserts that all of the defendants, together, acted to cause the harm suffered by the plaintiffs and therefore there is no need to specify which defendant is responsible for what. In essence, all of the allegations apply to each of the defendants equally in the complaint. The Court agrees with plaintiffs that this is

3

not an impermissible pleading and it is sufficient to place defendants on notice of what they are accused and the underlying facts. Accordingly, defendants' motion is denied as to this point.

        B.        Ordinary Negligence Claim.

Defendants argue that the action arises directly from injuries the residents allegedly suffered in the course of receiving skilled nursing services at the facility and, therefore, sounds in medical malpractice, not ordinary negligence. Specifically, defendants argue that the complaint contains only 2 out of 202 paragraphs that could be construed to sound in ordinary negligence and that there are no allegations that these allegations contributed to any injury to plaintiffs.

North Carolina courts examine, on a case by case basis, what constitutes a claim of professional negligence versus ordinary negligence. The standard North Carolina courts look to is whether the act "constitute[d] an occupation involving specialized knowledge or skill." *Taylor v. Vencor, Inc.*, 525 S.E.2d 201, 203 (N.C. App. 2000). Not all incidents leading to injury that occur in a healthcare setting necessarily constitute medical malpractice. *See e.g. id.* (finding that allowing a hospital patient to drop a lit cigarette on herself in a designated smoking area within a hospital did not constitute medical malpractice); *Lewis v. Setty*, 503 S.E.2d 673, 674 (N.C. App. 1998) (holding injury suffered during transport of patient from examination table to wheelchair did not constitute medical malpractice).

Here, plaintiffs have made allegations of improper and inadequate sanitation, improper environment, including insufficient air conditioning, failure to sufficiently bathe, lack of proper call bells/slap bells, purposefully disconnecting call bells/slap bells, ignoring call bells/slap bells, and threats to withhold healthcare. None of these allegations could properly be placed under the definition of medical malpractice and these allegations were clearly incorporated and re-alleged under each plaintiff's individual and group allegations as causing in part their injuries.

4

Accordingly, the claim is properly made and defendants' motion to dismiss is denied as to this point.

  C. Corporate Negligence Claim.

Defendants object to this claim in that they allege the complaint is entirely devoid of factual allegations that support a failure by defendants relating to their policies, management, or administrative decisions and of facts that tend to show how those alleged failures caused injury to the residents at the facility. Corporate negligence claims "brought against a hospital which pertain to clinical patient care constitute medical malpractice actions." *Frazier v. Angel Med. Ctr.*, 308 F. Supp. 2d 671, 677 (W.D.N.C. 2004) (citing *Estate of Waters v. Jarman*, 547 S.E.2d 142, 145 (N.C. App. 2001)). However corporate negligence claims arising "out of policy, management or administrative decisions" are derived from principles of ordinary negligence. *Id.* Defendants argue that the allegations relating to corporate negligence relate exclusively to the care and treatment that the residents received at the facility and therefore sound in medical malpractice, not corporate negligence.

This Court agrees with plaintiffs that its allegations relate to a failure to follow a healthcare provider's own policies, monitor or oversee performance by its healthcare providers, policy, management, and administrative decisions that clearly fall under corporate negligence principles. Accordingly defendants' motion to dismiss is denied as to this point.

  D. Negligent or Intentional Infliction of Emotional Distress.

Defendants argue that plaintiffs' claims for negligent and intentional infliction of emotional distress are nothing more than attempts to shoehorn another cause of action out of North Carolina's wrongful death statute. Defendants argue that a spouse that is emotionally distressed as the result of the death of a loved one is not the remedy contemplated by claims for

5

negligent or intentional infliction of emotional distress. Defendants cite no law in support of this proposition. If a plaintiff properly alleges negligent or intentional infliction of emotional distress as the result of the death of a loved one, then they are permitted to bring a claim for negligent or intentional infliction of emotional distress.

Under North Carolina law, to state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Pierce v. Atl. Group, Inc.*, 724 S.E.2d 568, 577 (N.C. App. 2012) (citation omitted). To state a claim for intentional infliction of emotional distress ("IIED") requires alleging the following: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Id.* (citation omitted).

Defendants still argue that plaintiffs fail to state a claim for which relief may be granted for both NEID and IIED. Defendants argue that the amended complaint fails to show that the residents' spouses suffered from any emotional distress that was extreme, persistent, or debilitating. The Court finds that plaintiffs have sufficiently alleged severe emotional distress. Defendants further argue that it was not reasonably foreseeable that the residents' spouses would suffer severe emotional distress. The Court finds that plaintiffs have adequately alleged that it was reasonably foreseeable that defendants' actions would cause the plaintiffs severe emotional distress.

Accordingly defendants' motion as to this point is denied. As there are no further arguments made by defendants for this Court to consider, defendants' motions to dismiss are

both denied in their entirety. Plaintiffs' claims are allowed to proceed against defendants BRHCC and Care Virginia.

## II. DEFENDANT CARE ONE'S MOTION TO DISMISS.

In addition to incorporating the arguments of defendants BRHCC and Care Virginia in their motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6), defendant Care One advances an argument for dismissal pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. Because there is a jurisdictional question raised by Care One, the Court must address it first before considering the sufficiency of the complaint as applied to Care One.

It is well established that this Court's assertion of jurisdiction over a non-resident defendant must be authorized by North Carolina's long-arm statute and must comply with the requirements of the Due Process Clause of the Fourteenth Amendment. *Christian Sci. Bd. of Dirs. of the First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause and therefore "the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs must demonstrate that this Court can properly assert either general or specific jurisdiction in order for personal jurisdiction to exist. *Yates v. Motivation Indus. Equip. Ltd.*, 38 F. App'x 174, 176 (4th Cir. 2002). When challenged with a pretrial personal jurisdiction motion without an evidentiary hearing, a plaintiff must "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

If the cause of action arises out of the defendant's contacts with North Carolina, this Court may exercise specific jurisdiction over the defendant. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). "In determining specific jurisdiction, the court considers '(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *PCS Phosphate Co. v. Norfolk S. Corp.*, 520 F. Supp. 2d 705, 712 (E.D.N.C. 2007) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)).

Care One claims that this Court cannot exercise specific jurisdiction over it because it has not engaged in any activities in North Carolina. In support of this statement, Care One supplied the Court with declaration by a Thomas A. McKinney, the Senior Vice President and Deputy General Counsel for Care One and its affiliated companies. [DE 22-1]. In that declaration, Mr. McKinney claims that Care One owns no real property in North Carolina, maintains no offices in North Carolina, and has no employees in North Carolina – indeed he claims Care One has no employees whatsoever. [*Id.*]. In response to Care One's motion, plaintiffs provide the Court with four attached affidavits and three other exhibits. [DE 30-1 – 30-7]. Plaintiffs raise the following issues which they argue establish contacts between Care One and North Carolina out of which this action arise: (1) there is a large sign in front of BRHCC that announces that the nursing home is "A CareOne Senior Care Center," (2) The employees of BRHCC wore name badges that identified each by name and listed "CareOne," (3) the employees of BRHCC were employed by and paid by Care One, (4) their paychecks came from Care One in New Jersey, (5) consultants were sent to BRHCC from Care One to try and improve the quality of care at BRHCC, (6) employees' business cards list their email address as name@care-one.com, (7) employees told

8

plaintiffs' families to contact Care One for their problems at BRHCC, (8) plaintiffs' families received documents on Care One letterhead that authorized Care One and BRHCC to file and receive payment for Medicaid care provided, and (9) plaintiffs' families had contact with a Care One regional manager. This just some of the support plaintiffs' provided for their contention that Care One played an active role with BRHCC and plaintiffs.

At this stage of the proceedings, the Court finds that plaintiffs have adequately met their burden of providing a prima facie case that this Court does have specific personal jurisdiction over defendant Care One. This matter clearly arises from Care One's contacts with the state of North Carolina.

Having determined that it has personal jurisdiction over defendant the Court turns to Care One's arguments for dismissal based upon Rule 12(b)(6). Care One merely incorporates the arguments made by BRHCC and Virginia Care to support dismissal pursuant to Rule 12(b)(6). As the Court denied BRHCC and Virginia Care's motions to dismiss, the Court also denies Care One's motion pursuant to Rule 12(b)(6) for the reasons discussed *supra* Part I.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are DENIED. The matter may proceed in its entirety.

SO ORDERED.

This the **31** day of July, 2014.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE