IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-150-BO

| | |
|---|---|
| GERALDINE L. VANDEVENDER, Administrator of the Estate of DEL RAY BAIRD, deceased, and JACQUELINE ANN BAIRD, deceased, RALPH D. JONES, JR., NORWOOD R. JONES, and LISA J. PATE, Co-Executors for the Estate of ELIZABETH J. JONES, deceased, and JOYCE K. HARRISON, Administrator of the Estate of BETTIE MAE KEE, deceased, and Estate of SAMUEL KEE, SR., deceased,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE RIDGE OF RALEIGH, LLC d/b/a BLUE RIDGE HEALTH CARE CENTER, CARE VIRGINIA MANAGEMENT, LLC d/b/a CAREVIRGINIA, and CARE ONE, LLC d/b/a CAREONE,<br><br>Defendants. | **ORDER** |

This matter comes before the Court on plaintiffs' motion for interest on judgment, [DE 286], defendants' motion for judgment as a matter of law on the issue of punitive damages, [DE 289], and defendants' motion for judgment as a matter of law as to Elizabeth Jones' medical malpractice claim, [DE 290]. The matters have been fully briefed and are ripe for disposition. For the following reasons, plaintiffs' motion is granted, defendants' motion as to punitive damages is granted, and defendants' motion as to Elizabeth Jones is denied.

BACKGROUND

Trial of this medical malpractice and wrongful death action was conducted before the undersigned from February 13, 2017, to February 16, 2017 in Elizabeth City, NC.[1] At the close of the plaintiffs' case in chief, defendants made an oral motion for directed verdict as to all of the plaintiffs' claims pursuant to Rule 50 of the Federal Rules of Civil Procedure. This motion was denied by oral order on February 15, 2017. Defendants renewed their motion at the close of their case in chief, which the Court held in abeyance pending the jury's rendering of a verdict. At the close of trial, the jury returned a verdict in favor of the plaintiffs for medical malpractice, awarding the plaintiffs compensatory and punitive damages.

On March 2, 2016, plaintiffs filed a motion for interest on the judgment under Rule 59 of the Federal Rules of Civil Procedure. On March 16, defendants filed separate motions for judgment as a matter of law pursuant to Rules 50 and 59 as to the issues of punitive damages and the medical malpractice claim of Elizabeth Jones.

DISCUSSION

I. Plaintiffs' Motion for Interest on Judgment

Rule 59 of the Federal Rules of Civil Procedure provides that a motion may be filed to alter or amend a judgment within 28 days after the entry of the judgment. "While the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). "Thus, Rule 59(e), in essence, gives the district court a chance to

---

[1] All evidentiary issues were raised and addressed at trial, therefore the Clerk is directed to terminate the pending motions at [DE 246, 251, 255, 257, and 263].

correct its own mistake if it believes one has been made." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007).

Under North Carolina law, interest on compensatory damages accrues from the date the action is filed, interest on punitive damages accrues from the date of the judgment, and no interest accrues for costs. N.C. Gen. Stat. §§ 24-5 and 24-1. In their complaint, plaintiffs requested interest on the judgment from the date this suit was instituted. However, the Court did not address such relief in its judgment, and such an omission was an inadvertent oversight. Accordingly, plaintiffs motion will be granted and the judgment will be amended to include such relief.

II. Defendants' Motion for Judgment as a Matter of Law on The Issue of Punitive Damages

Defendants filed a motion for judgment as a matter of law, arguing that plaintiffs failed, as a matter of law, to establish that any of the defendants could be found by a reasonable jury to be liable for punitive damages under North Carolina law. Rule 50 of the Federal Rules of Civil Procedure provides that a party who has moved for judgment as a matter of law at trial may, within twenty-eight days of the entry of judgment, renew such motion. In deciding a Rule 50 motion for judgment as a matter of law after trial, the Court is constrained to determine, without weighing the evidence or considering the credibility of the witnesses, whether substantial evidence supports the jury's findings. *Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir. 1999). After drawing all inferences and viewing the evidence in the light most favorable to the non-moving party, the Court may grant a Rule 50 motion only if it "determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002) (quotation omitted). The question

3

for the Court is not whether there is no evidence supporting the party against whom the motion is directed, but rather whether there is evidence upon which the jury might reasonably find a verdict for that party. *See* 9B C. Wright & A. Miller, *Federal Practice & Procedure*, § 2524 (3d ed.). In reviewing such a motion, the Court must consider the substantive evidentiary burden of proof that would apply at trial to the nonmovant's claims. *Id.*

This is a diversity action, and so state law governs the issue of punitive damages. *Browning-Ferris Indus. of Vt., Inc., v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989) ("In a diversity action, or in any other lawsuit where state law provides the basis of the decision, the propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law."). Thus, the Court must look to North Carolina law to determine the factors giving rise to an award of punitive damages and the amount that may be awarded. *Defender Indus., Inc., v. Nw. Mut. Life Ins. Co.*, 938 F.2d 502, 504–05 (4th Cir. 1991) ("In a diversity case, state substantive law governs the circumstances justifying an award and the amount of punitive damages[.]").

Under North Carolina law, punitive damages are distinct from and serve a different purpose than compensatory damages. "Punitive damages are never awarded as compensation. They are awarded above and beyond actual damages, as a punishment for the defendant's intentional wrong." *Overnite Transp. Co. v. Int'l Bhd. of Teamsters*, 125 S.E.2d 277, 286 (N.C. 1962). "Punitive damages may be awarded, in an appropriate case . . . to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1; *see also Rhyne v. K-Mart Corp.*, 594 S.E.2d 1, 7 (N.C. 2004). "Punitive damages are not awarded merely because of a personal injury inflicted, nor are

they measured by the extent of the injury. They are awarded because of the outrageous nature of the wrongdoer's conduct." *Meeks v. Crawford*, 160 N.C. App. 708 (2003) (unpublished).

Defendants contend that judgment as a matter of law in their favor is merited on plaintiffs' claims for punitive damages because plaintiffs failed to prove the type of conduct necessary to recover punitive damages. In order to prevail on a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that one or more of the following aggravating factors was present and proximately caused the injury at issue: (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15. "Malice" is defined by statute as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that result in harm to the claimant." N.C. Gen. Stat. § 1D-5(5). "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). The statute specifically provides that "willful or wanton conduct" means more than gross negligence. *Id.* "An act is willful when there is deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another." *Lashlee v. White Consol. Indus., Inc.*, 548 S.E.2d 821, 827 (N.C. 2001). "A wanton act is an act done with a 'wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights of others.'" *Id.* at 827 (quoting *Benton v. Hillcrest Foods, Inc.*, 524 S.E.2d 53, 60 (N.C. 1999)).

Defendants further argue that plaintiffs failed to meet their burden on punitive damages because plaintiffs failed to show that the officers, directors, or managers of the defendants

5

directly participated in or condoned any alleged wrongful act. The relevant North Carolina statute provides that:

> Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another. Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

N.C. Gen. Stat. § 1D-15(c). Courts in North Carolina have applied § 1D-15(c) to not only corporations, but also to limited liability companies and limited partnerships. *See, e.g., Phillips v. Rest. Mgmt. of Carolina, L.P.*, 552 S.E.2d 686 (N.C. Ct. App. 2001); *Kingsley v. Brenda & Gene Lummus, Inc.*, No. 1:11-CV-32, 2012 WL 727091 (W.D.N.C. Mar. 6, 2012).

Simply put, under North Carolina law, the Court must ask whether there sufficient evidence to show, by a clear and convincing standard, that the officers, directors, or managers of defendants participated in or condoned the alleged malicious, willful or wanton conduct that led to the injuries in this matter. The Court finds that there was not sufficient evidence presented at trial to meet this burden. There was no evidence presented at trial showing the state of mind or allowing an inference of the state of mind of the officers, directors, or managers of defendants. Although there was evidence showing that there were issues with understaffing and lack of supplies, there is nothing in the record that shows or would allow the reasonable inference that staffing was cut because of a corporate policy or directive or was done intentionally and with an ill will or wicked purpose toward defendants. There was no evidence of meeting minutes, company policies, internal memoranda, or any other documentary or testamentary evidence regarding any of the defendants that could allow a reasonable jury to conclude that these unidentified officers, directors, or managers of the defendants were aware of any of the alleged

aggravating conduct, much less that any of these individuals participated in or condoned the aggravating conduct or did so with an intentional or malicious purpose. One document, a DHHS survey, spoke of understaffing at the nursing home, several other treatment reports gave statements that the facility's staff was busy or short-staffed, and several witnesses testified as to warnings they gave to administrators or managers at the nursing home regarding staffing issues. But while this is all evidence of negligence on the part of defendants, it is not clear and convincing evidence of malicious intent. Additionally, while Nurse Cogan and Dr. Bernat testified as to standard of care and the causes of the decedents' injuries, neither was certified as an expert in nursing home administration and neither was a fact witness able to speak from firsthand or circumstantial knowledge of defendants' aggravating conduct.

Even assuming that a reasonable jury could find that the staffing issues were the result of direct management and control decisions by the unnamed and unidentified officers, directors, or managers of these three defendants, there is nothing in the record that speaks to the state of mind of these actors. Under North Carolina law, to award punitive damages a jury must find that these decisions were made with a "deliberate purpose not to discharge a duty" or with a "wicked purpose." One cannot reasonably clearly and convincingly infer that these defendants acted with a wicked purpose simply because there was not sufficient staff or supplies at the nursing home at a particular time.

In summary, under North Carolina law, the burden for demonstrating that punitive damages are merited is specifically delineated and higher than the burden for showing medical negligence. Plaintiffs were obligated to show that the officers, directors, or managers of defendants acted intentionally and with a wicked purpose in causing the injuries of the decedents. A jury's verdict may not rest on mere speculation, *Gibson v. Old Town Trolley Tours*

*of Wash., D.C., Inc.*, 160 F.3d 177, 181–82 (4th Cir. 1998), and with no evidence of who those individuals are, and no direct or circumstantial evidence that could reasonably reveal their state of mind or purpose without speculation, no reasonable jury could have concluded that defendants clearly and convincingly acted with malice or willfully and wantonly. For these reasons, defendant's renewed motion for judgment as a matter of law on the issue of punitive damages is granted.

In the alternative should the award of punitive damages stand, such awards must be reduced to comply with North Carolina law. "Punitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater." N.C. Gen. Stat. § 1D-25(b). In the event that an award exceeds these limits "the trial court shall reduce the award and enter judgment for punitive damages in the maximum amount." *Id.*

The jury's award of punitive damages exceeds North Carolina's statutory limitations on the amount of punitive damages recoverable in a civil action. At the conclusion of trial, the jury made the following compensatory damages awards:

- Estate of Del Ray Baird: $50,000.00
- Estate of Elizabeth Jones: $300,000.00
- Estate of Bettie Mae Kee: $300,000.00.

[DE 278]. Accordingly, the maximum amount of punitive damages that can be awarded under North Carolina law is as follows:

- Estate of Del Ray Baird: $250,000.00
- Estate of Elizabeth Jones: $900,000.00
- Estate of Bettie Mae Kee: $900,000.00.

III. Defendants' Motion for Judgment as a Matter of Law as to Elizabeth Jones' Medical Malpractice Claim

Defendants also filed a motion for judgment as a matter of law as to the medical malpractice claims of Elizabeth Jones. Defendants argue that plaintiffs failed to provide sufficient evidence that would allow a reasonable jury to conclude that the defendants breached the applicable standard of care when rendering care to Mrs. Jones. Defendants also argue that plaintiffs failed to establish that acts or omissions committed by any of the defendants proximately and legally caused Mrs. Jones' death.

North Carolina defines a medical malpractice action as a "civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2). It is undisputed that a nursing home is a health care provider as that term is defined by North Carolina law. N.C. Gen Stat. § 90-21.11(1). "In order to maintain an action for medical malpractice, a plaintiff must offer evidence to establish (1) the applicable standard of care; (2) breach of that standard; (3) proximate causation; and (4) damages." *Robinson v. Duke Univ. Health Sys.*, 747 S.E.2d 321, 323 (N.C. Ct. App. 2013).

The standard of care in a North Carolina medical malpractice action can only be established by an expert witness who "must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care in similar communities." *Purvis v. Moses H. Cone Mem'l Hosp. Corp.*, 624 S.E.2d 380, 384 (N.C. 2006); *see also* N.C. Gen. Stat. § 90-21.12. It is also well settled that in malpractice actions North Carolina courts "rely on medical experts to show medical causation because the exact nature and probable genesis of a particular type of injury involves complicated medical questions far

9

removed from the ordinary experience and knowledge of laymen." *Azar v. Presbyterian Hosp.*, 663 S.E.2d 450, 453 (N.C. 2008) (internal citations and quotation marks omitted).

Here, there was sufficient evidence presented at trial to support a verdict as to Elizabeth Jones' medical malpractice claim. Registered Nurse Kate Cogan, who was certified as an expert witness, testified at trial that defendants breached nursing standard of care with regard to Mrs. Jones by failing to have an adequate staffing level, failing to have proper equipment at her bedside, and failing to perform proper nursing assessment and interventions. Respiratory Therapist Myra Dotson, who testified as an expert and fact witness, testified that, while she herself and the other individuals in the room during Mrs. Jones incident did not breach the standard of care in the care they gave her, that others at the Blue Ridge Health Care Center breached the standard of care by failing to supply the proper breathing tube at Ms. Jones' bedside and by being understaffed. Dr. Mark Bernat testified as an expert witness that the breaches of care described by Nurse Cogan and Respiratory Therapist Dotson proximately caused the death of Mrs. Jones. Defendants presented expert witness evidence that Mrs. Jones' death was proximately caused by complications resulting from Mrs. Jones' lung cancer, but the jury was not obligated to accept this testimony or find that it outweighed plaintiffs' evidence as to the proximate cause of Mrs. Jones' death.

A reasonable jury could have found, in weighing the testimony and credibility of these witnesses, that a preponderance of the evidence established that defendants were medically negligent and proximately caused the death of Elizabeth Jones. There was sufficient evidence presented at trial to support this claim and, therefore, defendant's renewed motion for judgment as a matter of law on the issue of Elizabeth Jones' medical malpractice claim is denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for interest on judgment [DE 286] is GRANTED, defendants' motion for judgment as a matter of law on the issue of punitive damages [DE 289] is GRANTED, and defendants' motion for judgment as a matter of law as to Elizabeth Jones' medical malpractice claim [DE 290] is DENIED. The Clerk is DIRECTED to amend the judgment to vacate the award of punitive damages as to each plaintiff and also to include that interest will be awarded to the plaintiffs in an amount to be calculated at the time the defendants satisfy the underlying judgment at the rates established under N.C. Gen. Stat. § 24-5 and § 24-1.

SO ORDERED, this __1__ day of July, 2017.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE