**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1900

GERALDINE L. VANDEVENDER, Administrator of the Estate of Del Ray Baird, deceased, and Jacqueline Ann Baird, deceased; NORWOOD R. JONES, Co-Executor of the Estate of Elizabeth J. Jones, deceased; LISA J. PATE, Co-Executor of the Estate of Elizabeth J. Jones, deceased; JOYCE K. HARRISON, Administrator of the Estate of Bettie Mae Kee, deceased and Samuel Kee, Sr., deceased; RALPH D. JONES, JR., Co-Executor of the Estate of Elizabeth J. Jones, deceased,

   Plaintiffs - Appellants,

 and

SAMUEL KEE, SR., Individually,

   Plaintiff,

  v.

BLUE RIDGE OF RALEIGH, LLC, d/b/a Blue Ridge Health Care Center; CARE VIRGINIA MANAGEMENT, LLC, d/b/a Care Virginia; CARE ONE, LLC, d/b/a CareOne,

   Defendants - Appellees,

 and

RALEIGH REGIONAL REHAB CENTER, LLC, d/b/a Crabtree Valley Rehab Center; NC MANAGEMENT HOLDINGS, LLC,

   Defendants.

-------------------------------

NORTH CAROLINA ADVOCATES FOR JUSTICE,

Amicus Supporting Appellant.

## No. 17-1951

RALPH D. JONES, JR., Co-Executor of the Estate of Elizabeth J. Jones, deceased; GERALDINE L. VANDEVENDER, Administrator of the Estate of Del Ray Baird, deceased, and Jacqueline Ann Baird, deceased; NORWOOD R. JONES, Co-Executor of the Estate of Elizabeth J. Jones, deceased; LISA J. PATE, Co-Executor of the Estate of Elizabeth J. Jones, deceased; JOYCE K. HARRISON, Administrator of the Estate of Bettie Mae Kee, deceased and Samuel Kee, Sr., deceased,

   Plaintiffs - Appellees,

 and

SAMUEL KEE, SR., Individually,

   Plaintiff,

 v.

BLUE RIDGE OF RALEIGH, LLC, d/b/a Blue Ridge Health Care Center; CARE VIRGINIA MANAGEMENT, LLC, d/b/a Care Virginia; CARE ONE, LLC, d/b/a CareOne,

   Defendants - Appellants,

 and

RALEIGH REGIONAL REHAB CENTER, LLC, d/b/a Crabtree Valley Rehab Center; NC MANAGEMENT HOLDINGS, LLC,

   Defendants.

-------------------------------

NORTH CAROLINA ADVOCATES FOR JUSTICE,

   Amicus Supporting Appellant.

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:14-cv-00150-BO)

Argued: May 10, 2018

Amended: August 27, 2018

Decided: August 2, 2018

Before TRAXLER and DIAZ, Circuit Judges, and Richard M. GERGEL, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded with instructions by published opinion. Judge Gergel wrote the opinion, in which Judge Traxler and Judge Diaz joined.

**ARGUED:** Rachel Alexis Fuerst, HENSON & FUERST, PA, Raleigh, North Carolina, for Appellants/Cross-Appellees. Gregory Wenzl Brown, BROWN LAW LLP, Raleigh, North Carolina, for Appellees/Cross-Appellants. **ON BRIEF:** Thomas W. Henson, Jr., HENSON & FUERST, P.A., Raleigh, North Carolina, for Appellants/Cross-Appellees. Kristi L. Gavalier, BROWN LAW LLP, Raleigh, North Carolina, for Appellees/Cross-Appellants. Burton Craige, Narendra K. Ghosh, Paul E. Smith, PATTERSON HARKAVY LLP, Chapel Hill, North Carolina, for Amicus Curiae.

GERGEL, District Judge:

After a jury returned verdicts awarding compensatory and punitive damages for each Plaintiff in three wrongful death nursing home malpractice claims, Defendants moved for judgment as a matter of law, arguing Plaintiffs failed to produce evidence of an aggravating factor necessary to support an award of punitive damages under North Carolina law and failed to produce evidence necessary to support a verdict regarding Plaintiff Jones. The district court order granted the motion as to Plaintiffs' punitive damages awards and denied it as to Plaintiff Jones' award of compensatory damages. Plaintiffs appeal the grant of judgment for Defendants as to Plaintiffs' award of punitive damages. Defendants cross-appeal the denial as to Plaintiff Jones' award of compensatory damages. For the reasons stated below, we affirm the denial of the motion for judgment as a matter of law as to Plaintiff Jones' award of compensatory damages, reverse as to Plaintiffs' award of punitive damages, and remand with instructions to enter judgment for Plaintiffs consistent with North Carolina's statutory limits on punitive damages.

I.

Defendants operated a long-term skilled nursing facility known as the Blue Ridge Health Care Center ("Blue Ridge") in Raleigh, North Carolina. Blue Ridge operated a "vent unit," a special facility for ventilator-dependent patients. North Carolina requires vent units to provide 5.5 hours of nursing care per patient day and that "the direct care nursing staff shall not fall below a registered nurse and a nurse aide I at any time during a 24-hour period." 10A N.C. Admin. Code 13D.3003 & 13D.3005. Defendants, however,

consistently provided fewer than five hours of nursing care per day, and failed to staff a registered nurse for the third shift.

At trial, multiple former employees of Blue Ridge testified that Blue Ridge management was repeatedly warned that the staffing levels were a safety risk. In May 2011, the administrator of Blue Ridge, Darryl Taylor, resigned because his superiors "continued to push him to cut supplies and staff to levels that would not allow the staff to properly care for the patients." He was replaced by Ben McGovern on May 3, 2011. McGovern told employees that "he came in to cut staffing and that there was a new sheriff in town . . . and he was going to do whatever he needed to do to cut costs." Plaintiffs' accounting expert testified that Defendants' deviation from the required minimum staffing in the vent unit resulted in cost savings during 2011 of $1,523,939.16. When a staffing coordinator complained about the unsafe staffing levels, the coordinator was fired. McGovern himself was fired and replaced by interim administrator Pamela Street on February 6, 2012. Street testified that she knew more staff was needed to provide care for the vent unit patients, but her superiors would not allow her to hire more staff.

In addition to cutting staff, Blue Ridge management also reduced expenditures on supplies. *E.g.*, "And then [soon after Mr. McGovern took over] we started getting supplies of lesser value and supplies that really didn't work well . . . ;" "[T]he bill hadn't been paid, so supplies weren't coming;" "I [Respiratory Therapist Myra Dotson] spoke with the administrator of the facility about several issues, one in particular was the fact that we did not have adequate equipment and supplies."

5

The estates of three decedents who were ventilator-dependent patients at Blue Ridge in late 2011 and early 2012 claim the inadequate staffing and supplies about which Blue Ridge had been repeatedly warned proximately caused decedents' deaths. Del Ray Baird was admitted to the vent unit on December 29, 2011. He received an anoxic brain injury in the early morning of December 30, 2011. He was found in his room with his ventilator and alarms turned off for an unknown period. Because of understaffing, the respiratory therapist for Mr. Baird could not check the alarms in his room to make sure they were on. Bettie Mae Kee was found dead in the vent unit on March 20, 2012, with her breathing apparatus pulled from her neck and with no alarm or oxygen monitor in use. The standard of care required a sitter for Ms. Kee, but no sitter was provided because of understaffing. Elizabeth Jones died in the vent unit on March 2, 2012, when staff members were unable to replace her tracheostomy tube in a timely manner. The delay was caused by a lack of proper bedside supplies due to budget cuts.

The Plaintiff estates filed suit against three Defendant LLCs: Blue Ridge of Raleigh, the nursing facility; CareOne, which owned Blue Ridge; and CareVirginia Management, which helped manage the facility. The complaint was removed to federal court on March 13, 2014, and trial commenced on February 13, 2017. All former Blue Ridge employees who testified at trial did so for Plaintiffs. Defendants' only witnesses were two medical experts. After a four-day trial, the jury returned verdicts for Plaintiffs. The jury awarded compensatory damages of $50,000 for Plaintiff Baird, $300,000 for Plaintiff Jones, and $300,000 for Plaintiff Kee. The jury also awarded punitive damages of $1,523,939.16 for each Plaintiff.

Soon thereafter, Defendants filed a motion for judgment as a matter of law on the award of compensatory damages for Plaintiff Jones and on the awards of punitive damages. The district court denied the motion as to Plaintiff Jones' compensatory damages but granted the motion as to punitive damages, ruling Plaintiffs had failed to present evidence sufficient for a reasonable jury to find Defendants liable under North Carolina's punitive damages statute.

Plaintiffs timely appealed the district court's order on punitive damages, and Defendants cross-appealed the order on Plaintiff Jones' compensatory damages. We review a district court's order on a motion for judgment as a matter of law *de novo*, viewing the evidence in a light most favorable to the non-moving party and drawing every legitimate inference in that party's favor. *Huskey v. Ethicon, Inc.*, 848 F.3d 151, 156 (4th Cir. 2017).

## II.

North Carolina law allows punitive damages only if a claimant proves that the defendant is liable for compensatory damages and that one of three possible aggravating factors was present and related to the injury for which compensatory damages were awarded. N.C. Gen. Stat. § 1D-15 (2017). The three possible aggravating factors are "Fraud," "Malice," and "Willful or wanton conduct." *Id.* "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2017). Proof must be by clear and convincing evidence, and a court reviewing an award of punitive damages

under this statute must itself review the evidence under that standard. *Scarborough v. Dillard's, Inc.*, 693 S.E.2d 640, 643 (N.C. 2009). Moreover, North Carolina does not permit punitive damages based on vicarious liability. Punitive damages may be awarded against a business enterprise only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15.

The amount of punitive damages is limited to three times compensatory damages or $250,000, whichever is greater. N.C. Gen. Stat. § 1D-25 (2017). To determine the amount of punitive damages, the jury considers the purpose of punitive damages, "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts," and evidence related to several statutory factors. N.C. Gen. Stat. § 1D-35 (2017).

Applying the punitive damages statute to the evidence presented at trial, the district court found Plaintiffs failed to present sufficient evidence to support an award of punitive damages for two reasons. First, the district court found that Plaintiffs failed to present evidence showing Defendants' officers, directors, or managers participated in or condoned the asserted willful or wanton conduct. Second, the district court found that even if such participation or condonation were assumed, Plaintiffs failed to present sufficient evidence to show they had the requisite state of mind to establish any aggravating factor. For the reasons set forth below, both reasons are in error.

A.

North Carolina does not permit respondeat superior for punitive damages. Companies are liable for punitive damages for the acts or omissions of their employees only if the "officers, directors, or managers" of the company "participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15. Although the statute specifically refers to "corporations" and not other business entities with employees, North Carolina courts nonetheless apply the statute to limited liability companies and partnerships. *See, e.g.*, *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 552 S.E.2d 686, 694–95 (N.C. Ct. App. 2001). North Carolina courts define "manager" as "one who 'conducts, directs, or supervises something.'" *Miller v. B.H.B. Enterprises, Inc.*, 568 S.E.2d 219, 225 (N.C. 2002). In determining whether an employee was a manager, courts consider whether "(1) the employee was designated a manager; (2) the employee had supervisory powers; (3) the employee gave input on hiring and firing decisions and participated in personnel meetings; (4) the employee set work schedules for other employees; and (5) the employee handled money." *Everhart v. O'Charley's Inc.*, 683 S.E.2d 728, 738 (N.C. Ct. App. 2009).

The district court found that Plaintiffs failed to present evidence showing Defendants' managers participated in or condoned the decision-making on staffing and supplies that is asserted to constitute an aggravating factor. That finding was erroneous for three reasons.

First, the record clearly shows that Defendants' manager—Administrator Ben McGovern—participated in the decisions regarding staffing and supplies asserted to

constitute willful or wanton conduct. *E.g.*, Ben McGovern "had said that, you know, he came in to cut staffing and that there was a new sheriff in town—his words—there was a new sheriff in town, and he was going to do whatever he needed to do to cut costs"; "Soon after Ben McGovern arrived as administrator he made a lot of policy changes and began to drastically cut back on staff at Blue Ridge Health Care Center"; testimony that the administrator "runs the nursing home." The uncontroverted record is that he was jointly employed by all three Defendants. *cf. Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 129–30 (4th Cir. 2017) (providing, in the context of the Fair Labor Standards Act, that "joint employment exists when (1) two or more persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of a worker's employment").

Indeed, the district court never explicitly held that Mr. McGovern did not participate in staffing decisions or that Mr. McGovern was not a manager for punitive damages purposes. The district court's repeated reference to "unidentified officers, directors, or managers," however, implies that Mr. McGovern (and other Blue Ridge employees) was not identified as Defendants' officer, director, or manager. Any such implication, however, is belied by the record. Administrator Ben McGovern was identified both as a person participating in conduct constituting an aggravating factor and as the chief administrator of Blue Ridge. His duties satisfy every *Everhart* factor except possibly the handling of money. If an "assistant dining room manager" is a manager, the chief administrator of a medical facility unquestionably is one too. *Cf. Everhart*, 683 S.E.2d at 738.

Second, the district court found "there is nothing in the record that shows or would allow the reasonable inference that staffing was cut because of a corporate policy" regardless of whom is identified as a manager. But the extensive trial testimony that Defendants' policy was to cut staffing to save money, viewed in a light most favorable to Plaintiffs and with all legitimate inferences drawn in Plaintiffs' favor, clearly and convincingly shows that staffing was cut because of company policy. *E.g.*, Former Blue Ridge Administrator "Darryl Taylor left because he said he was getting pressure from New Jersey to cut staff"; Business Office Manager Peggy Singletary "said that she couldn't take it anymore, that she was—because she was doing payroll, and she would see how—how the staffing was so short, but [Administrator] Ben [McGovern] kept telling her that this is how it has to be"; "The administration of Blue Ridge [H]ealth Care Center and CareOne knew that the facility was understaffed and we could not properly care for the needs of the patients"; "Darryl Taylor quit after Blue Ridge Health Care Center and CareOne continued to push him to cut supplies and staff to levels that would not allow the staff to properly care for the patients"; Ben McGovern "had been told that [cutting staffing] was his job there. . . ." and "a corporate representative by the name of [Regional Director of Operations for CareOne Virginia] Don [Mc]Hale[] . . . came down and held a meeting [about staffing] with the staff at Blue Ridge." Defendants offered no fact witnesses to dispute this testimony.

Third, the punitive damages statute is satisfied if a company manager condones conduct constituting an aggravating factor. "The plain meaning of 'condone' is to 'forgive or overlook,' or 'permit the continuance of.'" *Miller v. B.H.B. Enters., Inc.*, 568

11

S.E.2d 219, 225 (N.C. Ct. App. 2002) (citations omitted). A manager condones employees' actions when the manager is aware of those actions and fails to intervene. *See, e.g.*, *Wallace v. M, M & R, Inc.*, 600 S.E.2d 514, 518 (N.C. Ct. App. 2004). Here, there was clear and convincing evidence that Defendants were fully aware of the dangerously inadequate staffing levels yet did nothing or worse. *E.g.*, Registered Nurse Kate Cogan testifying that in response to complaints to CareOne from Blue Ridge patient family members about inadequate staffing, Regional Director of Operations Don [McHale] went to Blue Ridge and fired more staff; "I [Respiratory Therapist Myra Dotson] spoke to the administrator and my boss and . . . the supervisor of respiratory [therapy] and told him that this is just—there's just—there's too many [vent unit] patients to take care of. . . . So I told him that it was just a dangerous situation." Again, Defendants offered no fact witnesses to dispute this testimony.

B.

Since there was clear and convincing evidence that Defendants' managers did participate in and condone the conduct asserted to constitute an aggravating factor, we turn to the district court's ruling that even if Defendants' managers did participate in or condone that conduct, Plaintiffs failed to present sufficient evidence to show they did so with the state of mind necessary for that conduct to constitute an aggravating factor. The three possible aggravating factors are "Fraud," "Malice," and "Willful or wanton conduct." Since there is no assertion of fraud or actual malice toward any decedent, the issue is whether the conduct of Defendants' managers constituted "willful or wanton conduct" as defined by North Carolina law: "the conscious and intentional disregard of

and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). "In the medical context, a medical provider acts willfully and wantonly when she knowingly, consciously, and deliberately places a patient at risk of harm by acting contrary to known protocols and procedures." *Clarke v. Mikhail*, 779 S.E.2d 150, 160 (N.C. Ct. App. 2015).

The evidence produced at trial clearly and convincingly shows that Defendants engaged in willful or wanton conduct by intentionally failing to follow federal and state laws on staffing, by intentionally violating Blue Ridge's policy regarding sitters for agitated patients, by intentionally failing to monitor oxygen levels or to provide continuous monitoring of alarms, and by intentionally failing to have necessary bedside supplies in the vent unit. Cuts to staffing and supplies were a deliberate corporate policy enacted to increase profits by millions of dollars. Defendants were repeatedly informed that those cuts placed patients at risk of death or serious injury—patients whose lives were entirely dependent upon Blue Ridge's diligence in providing care—yet after such warnings Defendants continued to profit by endangering their patients.

The district court, however, held that evidence insufficient because Plaintiffs failed to show Defendants acted with "malicious intent" or with a "wicked purpose" in causing the decedents' injuries. But under North Carolina's punitive damages statute, willful or wanton conduct does not require proof of malicious intent. *Cockerham-Ellerbee v. Town of Jonesville*, 660 S.E.2d 178, 181 (N.C. Ct. App. 2008); *see also Everhart*, 683 S.E.2d at 737 ("[Defendant's] claims that 'there is nothing "wicked" or

"needless" about [its conduct] . . . fails to apply N.C. Gen. Stat. § 1D–5(7)'s definition of "willful or wanton conduct."'"). Willful or wanton conduct only requires proof of "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

The district court improperly read "willful or wanton conduct" to require proof of "wanton" conduct. At common law, "willful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law." *Bailey v. N.C. R. Co.*, 62 S.E. 912, 914 (N.C. 1908). That is virtually synonymous with the statutory definition of "willful or wanton conduct." But "wanton" conduct arguably does require a wicked purpose: "An act is wantonly done when it is needless for any rightful purpose, and manifests a reckless indifference to the rights and interests of another." *Everett v. Receivers of Richmond & D.R. Co.*, 27 S.E. 991, 991–92 (N.C. 1897). North Carolina courts continue to apply these definitions today:

> In order to warrant punitive damages, an act of negligence must be willful or wanton.
>
>> A wanton act is an act done with a "wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights of others." An act is willful when there is a deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another.

*Lashlee v. White Consol. Indus., Inc.*, 548 S.E.2d 821, 827 (N.C. App. 2001) (quoting *Benton v. Hillcrest Foods, Inc.*, 524 S.E.2d 53, 60 (N.C. App. 1999)).

Here, Defendants deliberately failed to discharge their duty to provide adequate staff and supplies for their nursing facility. That duty is imposed by state and federal law because it is necessary for patient safety. *See* 42 C.F.R. §§ 483.25 & 483.30; 10A N.C. Admin. Code 13D.3003. Defendants knew—because they were repeatedly told—that the failure to provide minimum staffing and supplies was reasonably likely to result in patient injury or death. They nonetheless deliberately continued to disregard duties imposed by law because doing so would increase profits. This is precisely the type of egregious conduct punitive damages are meant to deter. *See* N.C. Gen. Stat. § 1D-1.

### III.

Defendants argue in their cross-appeal that the evidence was insufficient to show medical malpractice claim regarding Elizabeth Jones's death, because her representatives failed to show that Defendants breached any applicable standard of care or that their acts or omissions proximately caused her death. Defendants argue the evidence was insufficient to show malpractice because it is undisputed that all caregivers present when Ms. Jones died acted within the standard of care when attempting to replace her tracheostomy tube. The district court correctly disregarded this argument when denying Defendants' motion for judgment as a matter of law as to Ms. Jones, finding that there was sufficient evidence that others at Blue Ridge breached the standard of care by failing to supply the proper bedside supplies and by being understaffed. Likewise, the district court correctly disregarded Defendants' argument that their acts did not proximately

cause Ms. Jones's death, noting that the jury was not obliged to find testimony from Defendants' expert Dr. Phillip Ashburn that lung cancer complications proximately caused Ms. Jones's death outweighed testimony from Plaintiffs' expert Dr. Mark Bernat that the failure to have adequate staffing and proper bedside supplies proximately caused Ms. Jones's death.

IV.

Having determined that the district court correctly found Plaintiffs presented sufficient evidence that Defendants' negligence proximately caused the death of Elizabeth Jones but erred in finding Plaintiffs failed to present evidence sufficient for a reasonable jury to award punitive damages, we turn to the proper amount of punitive damages for each Plaintiff. The district court held that "should the award of punitive damages stand, such awards must be reduced to comply with North Carolina law." Plaintiffs concede that is correct. North Carolina limits punitive damages to three times the amount of compensatory damages or $250,000, whichever is greater. N.C. Gen. Stat. § 1D-25. On remand, the district court is instructed to enter judgment reducing the award of punitive damages to $250,000 for the estate of Del Ray Baird, $900,000 for the estate of Elizabeth Jones, and $900,000 for the estate of Bettie Mae Kee.

V.

For the reasons set forth above, the judgment of the district court is

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED WITH INSTRUCTIONS.*